IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

WALT GOODMAN FARMS, INC.,

    Plaintiff,

v.    No. 1:22-cv-01004-JDB-jay

HOGAN FARMS, LLC and
CHARLES PHILIP HIGDON,

    Defendants.

_____

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT HIGDON'S
MOTION TO DISMISS
AND
DIRECTING PLAINTIFF TO AMEND COMPLAINT
_____

*INTRODUCTION*

Pursuant to 28 U.S.C. § 1332, the Plaintiff, Walt Goodman Farms, Inc. ("Goodman Farms"), brought this action against Defendants, Hogan Farms, LLC ("Hogan Farms") and Charles Philip Higdon, alleging claims under state law. (Docket Entry ("D.E.") 1.) Before the Court is Higdon's motion to dismiss all claims against him in accordance with Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure (D.E. 15), to which Plaintiff has responded (D.E. 21), and the movant has replied (D.E. 22). The issues raised in the briefs are ripe for disposition.

*FACTS ALLEGED IN THE COMPLAINT*

The following facts have been alleged in the complaint relative to Plaintiff's claims against the movant. In March 2001, David and Linda Hogan purchased 270 acres of land in Fulton County, Kentucky. The following month, they entered into a contract with Goodman Farms in which they agreed to lease the property to Plaintiff for a term of the life of Goodman Farms' president, Walter

Goodman.[1]  Plaintiff also rented two farms in Obion County, Tennessee, from Jesse B. Murphy, Linda Hogan's father, from 1994 until Murphy's death in June 2001.  The Hogans entered into an oral agreement with Goodman Farms under which Plaintiff would continue to rent the Tennessee properties and two additional farms owned by the Hogans under the same terms as the written contract covering the Kentucky farm.  In late 2012, the Hogans conveyed the Kentucky and Obion County, Tennessee, farms to Defendant Hogan Farms.

An amicable relationship between the Goodman and Hogan families continued for several years.  Beginning on or about June 1, 2017, however, Higdon, a salesman for Nutrien Ag Solutions ("Nutrien Ag"), began advising Hogan Farms concerning farming procedures.[2]  Upon visiting the farms rented by Goodman Farms, Higdon would then provide information to David Hogan that prompted the latter to complain about farming practices at the properties.  Higdon gave unnecessary recommendations regarding input and testing as well as advice relative to planting and harvesting that were unreasonable in light of weather and ground conditions.  He also insisted on the use of certain seed marketed by Nutrien Ag.  Higdon's interference and criticism of Goodman Farms' practices led to a deterioration of the relationship between the Goodman and Hogan families.  In May 2021, the Goodman family was notified by Hogan Farms that they would no longer be permitted to farm any of the land after the end of the 2021 crop year.[3]  The instant action was filed on January 10, 2022.

---

[1]The complaint refers to a document, entitled "Rental Contract and Lease of Farm Land," purportedly attached thereto as Exhibit A.  However, it appears that the complaint contains no such exhibit.

[2]Although Goodman Farms also had an account with Nutrien Ag, its account was not handled by Higdon.

[3]Plaintiff advises in its response to the instant motion to dismiss that the termination did not include the lease on the Kentucky farm.

*JURISDICTION AND CHOICE OF LAW*

According to the complaint, Plaintiff is a Kentucky corporation with its principal business office in Hickman, Kentucky. Hogan Farms is a Tennessee limited liability company with its principal business office in Lakeland, Tennessee, and Higdon resides in Obion County, Tennessee. The amount in controversy exceeds $75,000. Thus, this Court has diversity jurisdiction over the matter under § 1332. A court sitting in diversity is to apply the law of the forum state, *see Croce v. New York Times Co.*, 930 F.3d 787, 792 (6th Cir. 2019), which is, in this case, Tennessee. The parties appear to agree that Tennessee law applies. Thus, the Court will look to the law of Tennessee in resolving the issues at bar.

*ARGUMENTS OF THE PARTIES AND ANALYSIS*

<u>Interference Claims.</u>

At the outset, Higdon points out that the nature of Plaintiff's claim, or claims, of interference is ambiguous. In the complaint, the claim appears under the heading "Intentional Interference with Business Relationship" (D.E. 1 at PageID 5) but contains allegations consistent with a claim for intentional interference with a contract. Indeed, the section cites to and specifically avers a violation of Tennessee Code Annotated § 47-50-109, which prohibits "[i]nducement of [b]reach of [c]ontract." Neither claim, movant argues, could survive a motion to dismiss under Rule 12(b)(6).

*Standard of Review*

The rule permits dismissal for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). The question before the Court on a motion to dismiss is not whether the plaintiff will ultimately prevail, *Skinner v. Switzer*, 562 U.S. 521, 530-31 (2011), but whether the well-pleaded facts "permit the court to infer more than the mere possibility of misconduct," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In resolving a Rule 12(b)(6) motion, a court is to

3

"view the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and look to see whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ammex, Inc. v. McDowell*, 24 F.4th 1072, 1079 (6th Cir. 2022) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In making its determination, the district court is to "stay within the four corners of the complaint[.]" *Bell v. City of Southfield, Mich.*, 37 F.4th 362, 364 (6th Cir. 2022). "A complaint should only be dismissed if it is clear to the court that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Herhold v. Green Tree Servicing, LLC*, 608 F. App'x 328, 331 (6th Cir. 2015) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)) (internal quotation marks omitted).

*Interference with Contract*

Section 47-50-109 renders it "unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto[.]" Tenn. Code Ann. § 47-50-109. To succeed under the statute or on a Tennessee common law tortious interference claim with respect to the performance of a contract,[4] a plaintiff must show

> (1) that there was a legal contract; (2) that the wrongdoer had sufficient knowledge of the contract; (3) that the wrongdoer intended to induce its breach; (4) that the

---

[4]While the elements of the common law and statutory actions are the same, punitive damages are recoverable under common law and treble damages are available under the statute. *See Zitzow v. Auto Owners Ins. Co.*, No. 1:21-cv-3-CHS, 2022 WL 1787110, at *2 (E.D. Tenn. Mar. 7, 2022).

4

>wrongdoer acted maliciously; (5) that the contract was breached; (6) that the act complained of was the proximate cause of the breach; and (7) that damages resulted from the breach.

*Bluecross Blueshield of Tenn., Inc. v. Dunwoody Labs, Inc.*, Case No. 1:20-cv-167, 2021 WL 6275252, at *8 (E.D. Tenn. Mar. 8, 2021) (quoting *TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987)).  The purpose of the tort is to "deter third parties from interfering with the contractual relations of parties to a contract."  *Zitzow*, 2022 WL 1787110, at *5 (quoting *Cambio Health Solutions, LLC v. Reardon*, 213 S.W.3d 785, 789 (Tenn. 2006)) (emphasis omitted).

Higdon submits that Goodman Farms has failed to allege sufficient facts to show that he acted intentionally and maliciously to cause a breach of the contract between Hogan Farms and the Plaintiff.  Rather, he insists, Goodman Farms' allegations of intent, malice, and causation are at best purely conclusory.

Conclusory allegations are not entitled to the presumption of truth generally afforded a plaintiff upon review of a Rule 12(b)(6) motion.  *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").  However, the Court finds the allegations contained in the complaint to be more than conclusory.

"A defendant acts intentionally when he desires the act to cause the breach or when he is substantially certain that his acts will result in a breach."  *Landers v. LoanCare, LLC*, Case No. 1:20-cv-284, 2021 WL 6340987, at *4 (E.D. Tenn. Sept. 29, 2021) (quoting *JIT Concepts, Inc. v. Shelby Cty. Healthcare Corp.*, 358 F. Supp. 2d 678, 686 (W.D. Tenn. 2005)) (brackets omitted).  "The essential thing is the intent to cause the result."  *Zitzow*, 2022 WL 1787110, at *4 (quoting Restatement (Second) of Torts:  Intentional Interference with Performance of Contract by Third

5

Person § 766, cmt. h) (emphasis omitted). Proximate cause, a "flexible concept that must be assessed case-by-case," requires "some direct relation between the plaintiff's injury and the defendant's conduct." *Lick Branch Unit, LLC v. Reed*, No. 3:13-cv-203, 2014 WL 546696, at *9 (E.D. Tenn. Feb. 10, 2014) (internal quotation marks omitted). The complaint alleges that Higdon intended to cause a breach of the contract by providing information to David Hogan that led the latter to complain about Goodman Farms' practices; giving unnecessary recommendations and advice relative to the farming operations that were, in Plaintiff's view, unreasonable; and insisting on the use of certain seed.

In the context of the instant claim, "malice" is defined as "the willful violation of a known right." *Santoni v. Mueller*, No. 3:20-cv-00975, 2022 WL 97049, at *10 (M.D. Tenn. Jan. 10, 2022). To "properly plead malice in a tortious interference claim, [a p]laintiff must allege that [the d]efendant acted intentionally and without legal justification." *Id.* "Interference is without justification if it is done for the indirect purpose of injuring plaintiff or benefiting the defendant at the plaintiff's expense." *Id.* (quoting *Crye-Leike Realtors, Inc. v. WDM, Inc.*, No. 02A01-9711-CH-00287, 1998 WL 651623, at *6 (Tenn. Ct. App. Sept. 24, 1998)). A showing of "ill will or spite toward the injured party" is not necessary. *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 639 (M.D. Tenn. 2006). Whether a defendant maliciously intended to induce a breach of contract is generally "best addressed on a developed record." *Wyndham Vacation Resorts, Inc. v. Consultant Grp.*, No. 2:12-cv-00096, 2014 WL 1922791, at *18 (M.D. Tenn. May 14, 2014). The complaint alleges that Higdon's insertion of himself into the farming operation on behalf of Hogan Farms in the manners identified in the previous section was without legal justification.

While discovery may ultimately prove otherwise, viewing the albeit slim facts alleged in the light most favorable to Goodman Farms, the Court cannot find at this early stage that "it is clear . . . that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Herhold,* 608 F. App'x at 331 (internal quotation marks omitted). The motion to dismiss the intentional interference with contract claim is therefore DENIED.

*Interference with Business Relationship*

A claim of interference with a business relationship, a sister claim to one for interference with a contract, "extends beyond situations in which there exists a valid contractual relationship." *Tennison Bros., Inc. v. Thomas*, 556 S.W.3d 697, 706 n.5 (Tenn. Ct. App. 2017) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 699 (Tenn. 2002)), *appeal denied* (Apr. 23, 2018); *see also Zitzow*, 2022 WL 1787110, at *6. It protects a "continuing business or other customary relationship which is non-contractual." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 176 (Tenn. Ct. App. 2007) (internal quotation marks omitted). Such a claim under Tennessee law requires a showing of

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am.*, 71 S.W.3d at 701 (footnotes and emphasis omitted); *see also Ryan v. Soucie*, No. E2018-01121-COA-R3-CV, 2019 WL 3238642, at *6 (Tenn. Ct. App. July 18, 2019) (same).

It is Higdon's position that Plaintiff has insufficiently alleged the third and fourth elements of the claim. The third, intent, has been addressed in the preceding section and need not be revisited here. Thus, the Court will focus its attention on the fourth, improper motive or means. Tennessee courts have not issued a "precise or all-encompassing definition of 'improper.'" *BNA*

7

*Assoc., LLC v. Goldman Sachs Specialty Lending Grp., L.P.*, ___ F. Supp. 3d ___, 2022 WL 1449707, at *2 (M.D. Tenn. May 9, 2022) (quoting *McCormick*, 247 S.W.3d at 176), *appeal filed* (6th Cir. June 10, 2022) (No. 22-5491).  Whether a defendant acted with improper motive depends on the facts and circumstances of each case.  *Trau-Med of Am.*, 71 S.W.3d at 701 n.5.  Tennessee courts have held that improper motive "require[s] that the plaintiff demonstrate that the defendant's predominant purpose was to injure the plaintiff."  *Id.*  Examples of improper means include:

> those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules; violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship; and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition.

*Id.* (internal citations omitted); *see also McCormick*, 247 S.W.3d at 176-77.

In its complaint, Plaintiff alleges facts from which the finder of fact could infer that Higdon's predominant purpose was to injure Goodman Farms and its business relationship with Hogan Farms and/or that he utilized an improper means, including misrepresentation, to interfere with the relationship.  Accordingly, Higdon's motion to dismiss the intentional interference with business relationship claim is DENIED.

*Amendment of Complaint*

Plaintiff has not requested leave to amend its complaint.  However, because of the ambiguity complained of by the movant relative to whether Goodman Farms alleges a claim of interference with contract, with business relationship, or both, as well as the Plaintiff's apparent intention, as evidenced by its brief, to allege both claims, Goodman Farms is DIRECTED to amend its complaint to reflect distinct claims of interference with contract and interference with business relationship.  If it seeks redress under only one theory, the amendment must state particularly

which cause of action is being alleged. Such amended complaint must be filed within fourteen days of the entry of this order and must not contain new factual allegations. If Plaintiff wishes to amend its complaint beyond that permitted herein, leave to amend must be sought pursuant to Fed. R. Civ. P. 15.

Fraud Claim.

The complaint avers that Higdon committed fraud by misrepresenting the efficacy and superiority of certain corn seed and urging that Goodman Farms plant approximately 300 acres of farmland earlier than in previous years. A common law fraud claim in Tennessee requires a showing that

> (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

*Vanderbilt Univ. v. Scholastic, Inc.*, 541 F. Supp. 3d 844, 856 (M.D. Tenn. 2021).

Fraud claims in diversity actions are subject to the heightened pleading standard articulated in Fed. R. Civ. P. 9(b), which requires a party to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b); *see Smith v. Gen. Motors LLC*, 988 F.3d 873, 884 (6th Cir. 2021) ("Rule 9(b) imposes a heightened pleading requirement for claims alleging fraud."); *see also Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001) ("While state law governs the burden of proving fraud at trial in a diversity action in federal court, the procedure for pleading fraud in all diversity suits in federal court is governed by the special pleading requirements of Fed. R. Civ. P. 9(b)."). To satisfy the rule, "a plaintiff's complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *City of Taylor Gen. Emps. Ret. Sys.*

9

*v. Astec Indus., Inc.*, 29 F.4th 802, 810 (6th Cir. 2022) (internal quotation marks omitted). Stated differently, the complaint must "specify the who, what, when, where, and how of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (internal quotation marks omitted). The rule is to be read in conjunction with Fed. R. Civ. P. 8, which requires "only 'a short and plain statement of the claim' made by 'simple, concise, and direct allegations.'" *Hard Surfaces Solutions, LLC v. Constr. Mgmt., Inc.*, 544 F. Supp. 3d 825, 830 (M.D. Tenn. 2021) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007)).

In seeking dismissal of the fraud claim, Higdon contends that the complaint fails to specify the time or place—the "when" and "where"—of the alleged misrepresentations. The timing is of particular importance, he argues, in light of Tennessee's three-year statute of limitations on fraud claims. *See* Tenn. Code Ann. § 28-3-105(1) ("Actions for injuries to personal or real property" "shall be commenced within three (3) years from the accruing of the cause of action."). The complaint alleges that Higdon began offering advice for Hogan Farms' operations in June of 2017, some four-and-one-half years prior to the initiation of the instant lawsuit.

By way of response, Goodman Farms acknowledges that it failed to allege the time and place of Higdon's alleged misrepresentations and that the statute of limitations may have expired for an individual tortious act but insists that the misrepresentations alleged "were part of a pattern of behavior which occurred over a period of several years." (D.E. 21-1 at PageID 109.) First, this explanation does nothing to address the "where" information Rule 9(b) requires. Second, the complaint offers no indication whatever, much less states with particularity, that the alleged misrepresentations occurred over a period of years or at any time during the statutory period. Accordingly, as the Plaintiff has failed to allege the "when" and "where" requirements of Rule

9(b), the fraud claim is DISMISSED.[5] *See Dunwoody Labs*, 2021 WL 6275265, at \*\*4-5 (in case in which plaintiff failed to identify the "when" and "where" of alleged fraudulent misrepresentations, Rule 9(b) requirements had not been met).

## *CONCLUSION*

In sum, Defendant Higdon's motion to dismiss is GRANTED IN PART AND DENIED IN PART.  Further, Plaintiff is DIRECTED to amend its complaint as indicated herein.

IT IS SO ORDERED this 28th day of July 2022.

                                           s/ J. DANIEL BREEN
                                           UNITED STATES DISTRICT JUDGE

---

[5]Because the Court has dismissed the fraud claim on the grounds indicated, it need not analyze the remaining bases proffered by the movant for dismissal thereof.

11